UNITED STATES DISTRICT COURT
FOR THE NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAURICE ANDERSON | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| CITY OF CHICAGO, a municipal corporation, Lieutenant Terrence McGuire, #376, in his individual capacity, Sergeant Tippi Rogan-Stennis #1536, in her individual capacity, and Mayor Lori E. Lightfoot | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) ) |

**Jury Trial Demand**

## COMPLAINT

Plaintiff, Maurice Anderson, by and through his attorneys, complains of Defendants, City of Chicago, a municipal corporation, Lieutenant Terrence McGuire, Sergeant Tippi Rogan-Stennis and Mayor Lori Lightfoot, in their official and individual capacities, as follows.

### NATURE OF THE ACTION

1. Officer Maurice Anderson began his employment with the Chicago Police Department over two decades ago, in or around 1997. He has spent his entire career as a patrol officer. Officer Anderson performed his job in an excellent manner and served without incident. Notwithstanding his excellent work performance, over the past five years Officer Anderson was retaliated against after reporting that Lieutenant McGuire attempted to nonsuit two lawfully-issued traffic tickets without the district Commander's approval and Officer Anderson's permission for a friend of McGuire. In retaliation for reporting the fact that Lieutenant McGuire unlawfully attempted to nonsuit his friend's traffic citations, McGuire has initiated a campaign of retaliation

over the past five years, subjecting Officer Anderson to a series of harassment, including initiating false SPARs (Summary Punishment Act Requests), counseling sessions, suspensions, and complaints to the Bureau of Internal Affairs ("BIA"). BIA also stripped Officer Anderson of his police powers, referred him to human resources, subjected him to drug screening, psychological testing and a physical examination. Per the instruction of Lieutenant McGuire, Defendant Rogan-Stennis illegally recorded Officer Anderson at Police Headquarters inside the Medical Services Section ("MSS") without Anderson's permission, and she served Anderson with two SPARs against him, which were initiated by McGuire. In January of 2021, Defendant Lightfoot was informed of this illegal behavior and took no action to prevent the harassment. Indeed, she condoned it. Defendants' actions toward Plaintiff is without justification. Lightfoot ordered BIA to conduct an investigation of themselves, which went nowhere.

## JURISDICTION

2.     Jurisdiction is provided by 28 U.S.C. §1983, as this matter alleges that Plaintiff has been deprived of rights guaranteed to him under the First Amendment to the Constitution of the United States of America. Pursuant to 28 USC § 1367(a), the Court has supplemental jurisdiction over the state law claims in Count III in that they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

## VENUE

3.     This action properly lies in this district pursuant to 28 U.S.C. § 1391(a) because the events giving rise to this claim occurred in this judicial district.

**PARTIES**

4. Plaintiff Maurice Anderson (hereinafter referred to as "Plaintiff" or "Officer Anderson") is a male citizen of the State of Illinois who is an employee of Defendant City of Chicago.

5. Defendant City of Chicago is an Illinois municipal corporation located in Cook County, Illinois. Defendant City of Chicago is an employer and principal of the individual defendant actors.

6. Defendant Terrence McGuire (hereinafter referred to as "McGuire") was at all relevant times hereto a Lieutenant of the Chicago Police Department and a superior to Plaintiff and acting under color of state law. Lieutenant McGuire had final or delegated final policy-making authority for the City of Chicago, specifically with regard to the personnel decisions within the City of Chicago Police Department, including as they applied to Plaintiff. Defendant McGuire is sued in his individual capacity. Defendant McGuire is an employer as defined by the Illinois Whistleblower Act.

7. Defendant Tippi Rogan-Stennis (hereinafter referred to as "Rogan-Stennis") was at all relevant times hereto a Sergeant of the Chicago Police Department and a superior to Plaintiff and acting under color of state law. Defendant Rogan-Stennis had final or delegated final policy-making authority for the City of Chicago, specifically with regard to personnel decisions within the City of Chicago Police Department, including as they applied to Plaintiff. Defendant Rogan-Stennis is sued in her individual capacity. Defendant Rogan-Stennis is an employer as defined by the Illinois Whistleblower Act.

8. Defendant City of Chicago, at all times relevant hereto, employed Defendants McGuire and Rogan-Stennis and is responsible for the acts of Defendants McGuire and Rogan-

Stennis, who were acting within the scope of their employment and pursuant to a custom, policy, and practice of violating individuals' rights to freedom of speech under the First Amendment to the Constitution of the United States.

9. Defendant Lori E. Lightfoot (hereinafter referred to as "Lightfoot") was at all relevant times hereto the Mayor of the City of Chicago and a superior to Plaintiff and acting under color of state law. Defendant Lightfoot is an employer as defined by the Illinois Whistleblower Act.

**FACTS**

10. Officer Anderson began his employment with the Chicago Police Department (hereinafter "CPD") in or around 1997, approximately twenty-five years ago.

11. As a beat patrol officer, Officer Anderson's primary job duties consisted of patrolling the areas to which he was assigned, issuing citations and/or making arrests when appropriate, and conducting preliminary investigations.

12. Officer Anderson has performed his job in an excellent manner and received several awards from the Chicago Police Department praising him for a job well done.

13. On April 24, 2017, Officer Anderson made a traffic stop of one Robert Bernier.

14. Mr. Bernier was extremely abusive to Officer Anderson, yelling that Bernier knew Anderson's boss, and he called Anderson racial slurs.

15. Anderson issued Bernier two citations.

16. On April 26, 2017, Lieutenant McGuire approached Anderson and instructed him to nonsuit Bernier's tickets because he was McGuire's friend. Anderson refused.

17. When the Court date for the tickets arrived, Bernier showed up two hours prior to the appointed time and requested a continuance for a date which Lieutenant McGuire knew that Officer Anderson would be on furlough.

18. McGuire falsified official CPD documents and removed his friend's driver's license from the police station. McGuire then returned Bernier's driver's license to him, after Bernier refused to sign for the return of his driver's license during the traffic stop.

19. Officer Anderson initiated a complaint against McGuire, and this is when the harassment began.

20. Officer Anderson had worked with Lieutenant McGuire for approximately seven years prior to this incident, and the two of them never had differences.

21. On January 29, 2018, Officer Anderson met with Sergeant Rogan-Stennis, per order of Lieutenant McGuire.

22. Rogan-Stennis was sent by McGuire to serve Anderson with two SPARs, which were initiated by McGuire.

23. Unbeknownst to Anderson, Rogan-Stennis recorded the meeting on her body worn camera. She did not inform Anderson that she was recording the conversation, and her doing so violated CPD Special Order ("SO3-14") and the Illinois Eavesdropping Act, 720 ILCS 5/14-2(a)(2), a Class 4 Felony.

24. As a result of the conversation Anderson had with Rogan-Stennis, she initiated another complaint against Anderson because he called McGuire a "racist ignorant bastard."

25. The investigation by the BIA sustained the charge, and two sanctions were imposed: a reprimand and a three-day suspension.

26. Rogan-Stennis was neither disciplined nor charged.

27. After Anderson returned to work from being injured on duty ("IOD"), McGuire ordered all 2nd Watch Sergeants to refuse to allow Anderson to obtain log numbers when requested, preventing Anderson from filing reports about the harassment.

28. The 2nd Watch Sergeants were ordered by McGuire to document Anderson's—and only Anderson's—responses during roll call on multiple days.

29. Lieutenant McGuire required Officer Anderson to come into the police station while he was on medical leave to complete his e-learning training, even though the regulations give a person on leave 30 days after returning to work to complete such training.

30. Finally, BIA accepted an allegation of insubordination against Officer Anderson for failing to call Lieutenant McGuire "sir" even though no other officer was required to do so.

31. This resulted in Officer Anderson being stripped of his police powers for two years and nine months, causing him to lose years of overtime pay and opportunities for promotion.

32. After being restored to full-duty status, CPD Human Resources Sergeant Karla Johnson ordered Anderson to remain at the Alternate Response Section ("ARS") because he refused to be transferred to another unit. Anderson wanted to remain in the 003rd District where he had seniority and had served since 2006.

## COUNT I
## RETALIATION IN VIOLATION OF THE FIRST AMENDMENT – 42 U.S.C. § 1983
**(Against all Defendants)**

33. Plaintiff re-alleges paragraphs 1-32 and incorporates them as if fully set forth herein.

34. The First Amendment to the United States Constitution confers upon an individual the right to free speech. Public employers may not retaliate against an employee who chooses to exercise those rights by speaking out on matters of public concern.

35. By their conduct as alleged herein, Defendants City of Chicago, Terrence McGuire, Tippi Rogan-Stennis and Lori Lightfoot retaliated against the Plaintiff for engaging in protected speech, including initiating false SPARs (Summary Punishment Act Requests), counseling sessions, suspensions, complaints to the BIA and stripping him of his police powers for more than 2 years.

36. The retaliation against Plaintiff was carried out by Defendants McGuire and Rogan-Stennis who had been delegated final policymaking authority with respect to the actions.

37. Defendant City of Chicago failed to train its managers, supervisors, and employees to prevent and/or remedy retaliation. Defendant's failure to train was deliberately indifferent to the Plaintiff's rights.

38. Defendant Lori Lightfoot failed to intervene to prevent the harassment and, indeed, condoned the behavior.

39. Defendants' actions were taken pursuant to a policy, custom, or pattern of retaliation against individuals who exercise their right to free speech and complain of, and expose, the unlawful or other misconduct of fellow police officers, and of giving preferential treatment to other officers.

40. The conduct of Defendants was willful, wanton, intentional and malicious and deliberately indifferent to Plaintiff's rights under 42 U.S.C. § 1983.

41. As a result of Defendants' unlawful conduct, Plaintiff has lost wages and other benefits, has suffered emotional distress, embarrassment, and humiliation, and his career has been damaged. Plaintiff has suffered additional non-pecuniary losses as a direct result of Defendants' conduct.

42. Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants on Count I and that it:

a) Declare that Defendants' conduct was in violation of his rights under the United States Constitution;

b) Award Plaintiff the value of the compensation and benefits lost as a result of Defendants' unlawful conduct;

c) Award Plaintiff the value of compensation and benefits he will lose in the future as a result of Defendants' unlawful conduct;

d) Award Plaintiff damages for emotional distress and compensatory damages;

e) Award Plaintiff punitive damages;

f) Award Plaintiff reasonable attorney's fees, costs and disbursements;

g) Enjoin Defendants and all officers, agent, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice, including retaliation in response to the exercise of constitutionally protected rights;

h) Enjoin Defendants and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to prevent retaliation; and

i) Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT II
## CONSPIRACY IN DEPRIVATION OF
## CONSTITUTIONAL RIGHTS – 42 U.S.C. § 1983
## (Against Defendants McGuire and Rogan-Stennis)

43. Plaintiff re-alleges paragraphs 1 through 32 and incorporates them as if fully set forth herein.

44. By their conduct as alleged herein, Defendants McGuire and Rogan-Stennis acted in the concert with each other and reached an understanding to deprive Plaintiff of his First Amendment right of free speech.

45. The actions of Defendants deprived Plaintiff of his right to free speech under the First Amendment to the Constitution of the United States.

46. The conduct of the Defendants was willful, wanton, intentional and malicious and deliberately indifferent to Plaintiff's rights under 42 U.S.C Section § 1983.

47. As a result of Defendants' unlawful conduct, Plaintiff has lost wages and other benefits, has suffered emotional distress, embarrassment, and humiliation, and his career has been damaged; Plaintiff has suffered additional non-pecuniary losses as a direct result of Defendants' conduct.

48. Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants on Count II and that it:

a) Declare that Defendants' conduct was in violation of his rights under the United States Constitution;

b) Award Plaintiff the value of the compensation and benefits lost as a result of Defendants' unlawful conduct;

c) Award Plaintiff the value of compensation and benefits he will lose in the future as a result of Defendants' unlawful conduct;

d) Award Plaintiff damages for emotional distress and compensatory damages;

e) Award Plaintiff punitive damages;

f) Award Plaintiff reasonable attorney's fees, costs and disbursements;

g) Enjoin Defendants and all officers, agents, employees and all persons in active concert or participation with them from engaging in any unlawful employment practice, including retaliation in response to the exercise of constitutionally protected rights;

h) Enjoin Defendants and all officers, agents, employees and all persons in active concert or participation with them to institute and carry out all policies and practices to prevent retaliation; and

i) Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT III
## VIOLATION OF ILLINOIS WHISTLEBLOWER ACT
**(Against all Defendants)**

49. Plaintiff re-alleges paragraphs 1 through 32 and incorporates them as if fully set forth herein.

50. The Illinois Whistleblower Act, 740 ILCS 174/1 et seq., states that "an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation."

51. By their conduct as alleged herein, Defendants intentionally retaliated against Plaintiff in response to his report of Lieutenant McGuire's unlawful conduct of attempting to nonsuit his friend's traffic citations and committing forgery and theft in the process. McGuire falsified official CPD documents and removed his friend's driver's license from the police station.

52. The conduct of Defendants was willful, wanton, intentional and malicious and deliberately indifferent to Plaintiff's rights under 42 U.S.C. Section § 1983.

53. As a result of Defendants' unlawful conduct, Plaintiff has lost wages and other benefits, has suffered emotional distress, embarrassment, and humiliation, his career has been damaged; Plaintiff has suffered additional non-pecuniary losses as a direct result of Defendants' conduct.

54. Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants on Count I and that it:

 a) Declare that Defendants' conduct was in violation of his rights under the United States Constitution;

 b) Award Plaintiff the value of the compensation and benefits lost as a result of Defendants' unlawful conduct;

    c) Award Plaintiff the value of compensation and benefits he will lose in the future as a result of Defendants' unlawful conduct;

    d) Award Plaintiff damages for emotional distress and compensatory damages;

    e) Award Plaintiff punitive damages;

    f) Award Plaintiff reasonable attorney's fees, costs and disbursements; and

    g) Award Plaintiff any and all other relief as the Court deems just on the premises.

**MAURICE ANDERSON**

By:   /s/ Mark A. Flessner
        One of His Attorneys

Mark A. Flessner (Mark.Flessner@sfbbg.com)
Adam Maxwell (Adam.Maxwell@sfbbg.com)
Schoenberg Finkel Beederman Bell Glazer LLC
300 S. Wacker Drive, Suite 1500
Chicago, Illinois 60606
312/648-2300